1  **KIRKLAND & ELLIS LLP**
2  Robyn E. Bladow (State Bar No. 205189)
   robyn.bladow@kirkland.com
3  333 South Hope Street
   Los Angeles, California 90071
4  Telephone:  (213) 680-8400

5  Renee D. Smith (*pro hac vice* application to be filed)
   renee.smith@kirkland.com
6  300 N. LaSalle
   Chicago, Illinois 60654
7  Telephone: (312) 862-2310

8  *Attorneys for General Motors LLC*

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12  TAYLOR PANTEL, JAMES            CASE NO.
    ROBERTSON, SCOTT MCANALLY,
13  CHRIS MCCOY, MICHAEL MCCOY,     CALIFORNIA STATE COURT CASE
    AMOREENA MCCOY, ACE             NO. 19LBCV00438
14  MCFARLIN, JOHN MCLEOD, ALVIS
    MCWHORTER, JANICE               **NOTICE OF REMOVAL OF ACTION**
15  MCWHORTER, JOEY MENDOZA,        **BY DEFENDANT GENERAL**
    MARV MESKE, LINDA MESKE,        **MOTORS LLC PURSUANT TO 28**
16  MIKE MILIOTTI, DONNA MILIOTTI,  **U.S.C. §§ 1331, 1332, 1441, 1446, AND**
    ASHLEY MILLER, BRYCE            **1453**
17  MONTELEONE, JOEDY MUHA,
    MATTHEW NATTENBERG, SAM
18  NEER, ROBERT NICHOLS, CHERI
    DICKSON NICHOLS, DAVID
19  OAKLEY, DENISE OAKLEY, FRED     (DIVERSITY, CAFA, AND
    ORTIZ, CARLOS PAPION, DOMINIC   FEDERAL-QUESTION JURISDICTION)
20  PATINO, DALE PEABODY, DENISE
    PEABODY, ESTELLA PEREZ-ORTIZ,
21  BILLY PERKINS, JENNIFER
    PERKINS, SAM PETERSON, JERRY
22  PETTES, DIANNE PETTES, TREVOR
    PIERSON, DEREK RANSON, DINA
23  RANSON, EUGENE RASCHKE,
    ROBIN RASCHKE, WILLIAM
24  REEDER, LISA REEDER, TERRY
    RHODE, CATHERINE RHODE,
25  MARK ROBB, NICOLE RUGGERI,
    RICK RUSSELL, JUAN SANCHEZ,
26  ROB SAUSER, BEAR SCHARBARTH,
    EDWARD SCHULTZ, EDWARD
27  SCOTT, AMIT SHARMA, VARUN
    SHARMA, JASON SHEHAN, SAHN
28  SIRIVONG, ANDREW SMITH, CHAD

─────────────────────────────────────────

SMITH, GLEN SMITH, SIMON
SMITH, STEVEN SMITH, BRITNEY
SMITH, JANET SMITH, RICK
SOLTIES, BRENDA SOLTIES,
JAVIER SOTO, CRAIG SPARKS,
JOHN SPENCER, MATHEW
STORCKMAN, JOHN SUJISHI,
NIELSEN TAUOA, BRYAN TERRY,
KIMBERLY TERRY, ANDREA
TEVINI, BRENT TOPIE, NICOLE
TOPIE, KIMBERLY TOPIE, ROBERT
TOPIE, GERRY TRIAS, FLOR TRIAS,
SCOTT TRUMP, FRANK VONADA,
JULIE VONADA, JOE WEHRLE,
JOHN WHITE, SPENCER WHITE,
JOHN WILCOX, KATHRYN WILCOX,
ROBERT WILLIAMS, CAREY
WISHON, CHARLES YOUNG, AND
JANEL YOUNG,

            Plaintiffs,

    vs.


GENERAL MOTORS LLC, a Delaware
Limited Liability Company; ROBERT
BOSCH GMBH, a corporation organized
under the laws of Germany; ROBERT
BOSCH LLC, a Delaware Limited
Liability Company; RALLY AUTO
GROUP, INC., a corporation organized
under the laws of the State of California;
and MERLE STONE CHEVROLET, a
corporation organized under the laws of
the State of California,

            Defendants.

---

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant General Motors LLC ("GM") hereby removes the above-entitled action from the Superior Court for the State of California, County of Los Angeles, to the United States District for Court for the Central District of California, and states as follows.

## INTRODUCTION

1.     The removed case is a civil action filed on July 9, 2019, in the Superior Court for the State of California, County of Los Angeles, entitled: *Taylor Pantel, et al. v. General Motors LLC, et al.,* Case No. 19LBCV00438 ("Complaint" or "Cmplt."). The Complaint was served on GM on July 24, 2019 and is brought by 92 individual plaintiffs against diverse defendants: GM, Robert Bosch GmbH and Robert Bosch LLC (the "Bosch Defendants"), and non-diverse defendants: Rally Auto Group, Inc. and Merle Stone Chevrolet (the "Dealer Defendants").

2.     The removed case is one of two cases filed by the law firm of Heygood, Orr & Pearson ("Heygood") in the same California State Court, which collectively cover 177 individual plaintiffs (the "Heygood California Cases"). The Heygood California Cases are virtually identical to 26 cases that Heygood filed in early May 2019 on behalf of over 2900 individual plaintiffs in the United States District Court for the Eastern District of Michigan (the "Heygood Federal Cases"). Both the Heygood California Cases and the Heygood Federal Cases, in turn, cut-and-paste nearly verbatim allegations from a putative class action filed in May 2017 by different lawyers in the United States District Court for the Eastern District of Michigan. *In re Duramax*, Case No. 2:17-cv-11661 (E.D. Mich., Ludington, J.) (the "Federal Class Case" or "*In re Duramax*").

3.     The gravamen of the Federal Class Case, the Heygood Federal Cases, and the Heygood California Cases is the same. Each of the 29 cases alleges that: (i) 2011-2016 model year Chevrolet Silverado and GMC Sierra Duramax Diesel Vehicles (collectively the "Duramax Vehicles") contained illegal "defeat devices" designed to evade federal emissions standards and to defraud the federal Environmental Protection Agency ("EPA");

(ii) the Duramax Vehicles do not comply with EPA regulations, the required certificates of conformity with federal emissions standards were fraudulently obtained and thus invalid, and the Duramax Vehicles were never legally offered for sale; and (iii) GM and the Bosch Defendants conspired to conceal the alleged defeat devices from the EPA, the California Air Resource Board ("CARB"), regulators, and consumers.

4.      Heygood attempts to avoid federal jurisdiction over the Heygood California Cases by: (i) fraudulently joining two California car dealerships against whom there is no colorable claim and whose presence is neither necessary nor indispensable, in a transparent attempt to destroy diversity jurisdiction; (ii) artificially splintering 177 plaintiffs into two alphabetically-divided complaints to try to avoid removal under the Class Action Fairness Act of 2005 ("CAFA"); and (iii) artfully pleading around federal-question jurisdiction even though plaintiffs' right to relief depends on the resolution of a substantial question of federal law.  Removal of this action is appropriate for several reasons:

5.      *First*, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states, and the amount in controversy exceeds $75,000. Although the Dealer Defendants (Rally Auto Group, Inc. and Merle Stone Chevrolet) are citizens of California, the Court should either (i) disregard their citizenship under the doctrine of fraudulent joinder or, in the alternative, (ii) exercise its discretion to sever the claims against them as dispensable parties under Federal Rule of Civil Procedure 21.

6.      *Second and independently*, the Court has jurisdiction under 28 U.S.C. § 1332(d) pursuant to CAFA's "class action" prong, which requires only "minimal" diversity among the parties; allows aggregation of the jurisdictional amount-in-controversy; and applies when the substance of the action is in effect a class action—regardless of the labels that plaintiffs applied.  Heygood's attempt to gerrymander the complaints to include less than 100 plaintiffs cannot defeat CAFA's class action jurisdiction where it is plain that plaintiffs are "artificially structuring their suits" in an attempt "to avoid federal jurisdiction." *Freeman v. Blue Ridge Paper Prods.*, 551 F.3d 405, 407 (6th Cir. 2008).

7.      *Third and independently*, the Court has federal question jurisdiction under 28

U.S.C. § 1331 because plaintiffs' claims depend on the resolution of substantial questions of federal law concerning federal emissions regulations and standards and compliance with federal EPA regulations that are necessarily federal in character.

## STATEMENT OF JURISDICTION

8.     This is a civil action over which this Court has original diversity and federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1332, and which therefore may be removed to this Court under 28 U.S.C. §§ 1441, 1446, and 1453, as discussed in more detail below.

## BACKGROUND

9.     On May 25, 2017, plaintiffs in the Federal Class Case filed a putative class action in the United States District Court for the Eastern District of Michigan on behalf of themselves and a putative nationwide class of approximately 700,000 "persons who purchased or leased a model year 2011-2016 GM Silverado 2500HD or 3500HD or GM Sierra 2500HD or 3500HD" vehicles equipped with Duramax diesel engines.  (Cmplt., *In re Duramax*, ECF No. 18 ("*Duramax* Cmplt.") ¶¶ 225, 229)  As amended, the Federal Class Case alleged that Duramax Vehicles (i) can have higher emissions in certain "real world" or "on-road" driving conditions than in the EPA's specific, mandatory, laboratory testing procedures; (ii) contained "defeat devices" designed to evade federal emissions standards and to defraud the EPA; and (iii) emitted emissions in excess of strict U.S. standards.  (*Id.* ¶¶ 281-428, 429-671)  The Federal Class Case includes claims for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the consumer protection statutes and common law of 46 states, including California.[1]  In August 2017, the Federal Class Case was reassigned to the Hon. Thomas L. Ludington in the Eastern District of Michigan.  (8/30/17 Order, *In re Duramax,* ECF No. 33.)

---

[1] The Federal Class Case alleges violations of: (i) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (*Duramax* Cmplt. ¶¶ 296-312); (ii) the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 (*id.* ¶¶ 313-24); and (iii) fraudulent concealment under California common law (*id.* ¶¶ 330-49).

10.    In May 2019—two years after the Federal Class Case was first filed— Heygood began serially filing lawsuits that unabashedly copied nearly verbatim the factual allegations contained in the Federal Class Case, including allegations of violations of federal emissions standards based expressly on the purported testing of experts retained by the Federal Class Case "Class Counsel."  By May 10, 2019, Heygood had filed 26 complaints on behalf of over 2900 individual plaintiffs in the Eastern District of Michigan (the same federal Court where the Federal Class Case is pending).  The Heygood Federal Cases collectively allege violations of federal RICO and the common or statutory laws of 48 states.[2]  Pursuant to Eastern District of Michigan Local Rule 83.11, each of the Heygood Federal Cases was designated and assigned to Judge Ludington as a companion to the Federal Class Case.

11.    On May 10, 2019, Heygood filed two cases in the Superior Court for the State of California on behalf of a total of 177 individual plaintiffs (the "First Heygood California Cases").[3]  On June 14, 2019, GM removed the First Heygood California Cases to the United States District Court for the Northern District of California pursuant to 28 U.S.C.

---

[2] The 26 Heygood Federal Cases that are pending in the United States District for the Eastern District of Michigan are: *Abney v. GM LLC*, No. 1:19-cv-11376; *Ahearn v. GM LLC*, No. 1:19-cv-11337; *Andersen v. GM LLC*, No. 1:19-cv-11331; *Anderson v. GM LLC*, No. 1:19-cv-11349; *Anderton v. GM LLC*, No. 1:19-cv-11306; *Arkels v. GM LLC*, No. 1:19-cv-11308; *Aten v. GM LLC*, No. 1:19-cv-11366; *Back v. GM LLC*, No. 1:19-cv-11372; *Balch v. GM LLC*, No. 1:19-cv-11394; *Barger v. GM LLC*, Case 1:19-cv-11320; *Bartel v. GM LLC*, No. 1:19-cv-11357; *Beavers v. GM LLC*, No. 1:19-cv-11341; *Bloom v. GM LLC*, No. 1:19-cv-11351; *Bradford v. GM LLC*,  No. 1:19-cv-11344; *Garza v. GM LLC*, Case No. 1:19-cv-11368; *Gravatt v. GM LLC*, No. 1:19-cv-11374; *Hackett v. GM LLC*, No. 1:19-cv-11313; *Harvell v. GM LLC*, No. 1:19-cv-11307; *Jaramillo v. GM LLC*, No. 1:19-cv-11354; *Lanctot v. GM LLC*, Case No. 1:19-cv-11339; *Oliver v. GM LLC*, No. 1:19-cv-11365; *Patton v. GM LLC*, No. 2:19-cv-11332; *Pruitt v. GM LLC*, No. 1:19-cv-11348; *Richardson v. GM LLC*, No. 1:19-cv-11381; *Scott v. GM LLC*, No. 1:19-cv-11370; and *Sloan v. GM LLC*, No. 1:19-cv-11379.

[3] Case Nos. 19CHCV00392 and 19LBCV00300    .

-4-

§§ 1331, 1332, 1441, 1446, and 1453.[4]  On July 1, 2019, GM moved to transfer venue of the First Heygood California Cases to the Eastern District of Michigan, and requested that the Court rule on the transfer motion before deciding an anticipated motion to remand.[5] The next day, on July 2, 2019, Heygood voluntarily dismissed the First Heygood California Cases.[6]

12.   On July 9, 2019, Heygood filed the *Pantel* Complaint, which is virtually identical to one of the now-dismissed First Heygood California Cases.  GM was served with the *Pantel* Complaint on July 24, 2019.  *Pantel* is brought by plaintiffs whose last names begin with the letters "Mc" through "Y," and names as defendants: GM, Robert Bosch GmbH, Robert Bosch LLC, Rally Auto Group, Inc., and Merle Stone Chevrolet. The *Pantel* Complaint brings the following California state-law claims: (1) Breach of Express Warranty - Song-Beverly Consumer Warranty Act; (2) Breach of Implied Warranty - Song-Beverly Consumer Warranty Act; (3) Violations of California Unfair Competition Law; (4) Violations of the California False Advertising Law; (5) Fraudulent Concealment; (6) Negligent Misrepresentation; (7) Civil Conspiracy; and (8) Joint Venture.  (Cmplt. Counts 1-8)

13.   On July 9, 2019, Heygood also filed another California Case on behalf of 85 individual plaintiffs with last names beginning alphabetically with the letters "A" through "Ma" against GM, Robert Bosch GmbH, Robert Bosch LLC, Courtesy Chevrolet Center, Inc. and Paradise Chevrolet in the Superior Court for the State of California, County of Los Angeles, entitled: *Mike Bulaon, et al. v. General Motors LLC et al.*, Case No. 19CHCV00572 ("*Bulaon* Complaint").[7]  The *Bulaon* Complaint is virtually identical to the

---

[4]  2:19-cv-5205-MWF-KS, ECF No. 1; 2:19-cv-5211-MWF-KS, ECF No. 1.

[5]  2:19-cv-5205-MWF-KS, ECF No. 20; 2:19-cv-5211-MWF-KS, ECF No. 21.

[6] 2:19-cv-5205-MWF-KS, ECF No. 21; 2:19-cv-5211-MWF-KS, ECF No. 22.

[7] GM is filing contemporaneously herewith a Notice of Removal of the *Bulaon* action.

1    other now-dismissed First Heygood California Case.

2        14.    Aside from the alphabetical divide between plaintiffs and naming two

3    different Dealer Defendants, the *Bulaon* and *Pantel* Complaints are identical. The

4    gravamen of the Heygood California Cases, the Heygood Federal Cases, and the Federal

5    Class Case is the alleged employment and concealment of "defeat devices," designed to

6    evade U.S. emissions standards and defraud the EPA, that "turn down the emissions

7    controls when the vehicle senses that it is not in [an EPA] certification test cycle."

8    (*Compare* Cmplt. ¶¶ 1-2, 4, *with* Cmplt., *Abney*, No. 1:19-cv-11376, ECF No. 1 ("*Abney*

9    Cmplt.") ¶¶ 1-2, 4, *and with Duramax* Cmplt. ¶¶ 1-2, 4.)

10       15.    The principal differences between the Federal Class Case and the Heygood

11    California Cases are: (i) the Heygood California Cases deny that the cases are putative class

12    actions, although they recite verbatim the core factual allegations of the Federal Class Case

13    and rely on alleged test results provided to and exhibits selected by "Class Counsel"; (ii)

14    the Heygood California Cases do not bring separate federal RICO claims; and (iii) the

15    Heygood California Cases name Dealer Defendants.

16       16.    The principal differences between the Heygood Federal Cases and the

17    Heygood California Cases are: (i) each of the Heygood Federal Cases includes more than

18    100 plaintiffs, while each of the Heygood California Cases conspicuously names less than

19    100 plaintiffs; (ii) the Heygood Federal Cases (while not labeled as class actions) assert

20    federal court jurisdiction under the CAFA; (iii) the Heygood Federal Cases allege that GM

21    and the Bosch Defendants "lied to" or "hid" alleged defeat devices from a number of

22    entities, <u>specifically including dealers,</u> while the Heygood California Cases allege that GM

23    and the Bosch Defendants "lied to" or hid" alleged defeat devices from those exact same

24    entities, but now (in contrast to the First Heygood California Cases) <u>delete all references</u>

25    <u>to dealers</u>; (iv) in addition to federal RICO claims, the Heygood Federal Cases purport to

26    bring claims arising from the laws of 48 states that do not include California, while the

27    Heygood California Cases purport to bring only California-state-law claims; and (v) the

28    Heygood California Cases name Dealer Defendants.

17.    After this case is removed and the Clerk assigns this case a docket number, GM intends to move under 28 U.S.C. § 1404(a) to transfer this action to the District Court for the Eastern District of Michigan, where the 26 Heygood Federal Cases and the Federal Class Case are pending.

## BASES FOR JURISDICTION

## I.    DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)(1).

18.    This court has original jurisdiction because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).

### A.    Removal Is Proper Because There Is Complete Diversity Of Citizenship.

19.    80 of the 92 plaintiffs are citizens of the State of California.  (Cmplt. ¶¶ 21-42, 44-52, 54-56, 58-63, 66-75, 77-85, 87 (alleging that plaintiffs Taylor Pantel, James Robertson, Scott Mcanally, Chris Mccoy, Michael Mccoy, Amoreena Mccoy, Ace McFarlin, John Mcleod, Alvis Mcwhorter, Janice Mcwhorter, Joey Mendoza, Marv Meske, Linda Meske, Mike Miliotti, Donna Miliotti, Ashley Miller, Bryce Monteleone, Joedy, Muha, Matthew Nattenberg, Sam Neer, Robert Nichols, Cheri Dickson Nichols, David Oakley, Denise Oakley, Fred Ortiz, Carlos Papion, Dominic Patino, Dale Peabody, Denise Peabody, Estella Perez-Ortiz, Sam Peterson, Jerry Pettes, Dianne Pettes, Trevor Pierson, Derek Ranson, Dina Ranson, Eugene Raschke, Robin Raschke, William Reeder, Lisa Reeder, Terry Rhode, Catherine Rhode, Mark Robb, Nicole Ruggeri, Juan Sanchez, Rob Sauser, Bear Scharbarth, Edward Scott, Amit Sharma, Varun Sharma, Jason Shehan, Sahn Sirivong, Andrew Smith, Simon Smith, Janet Smith, Rick Solties, Brenda Solties, Javier Soto, Craig Sparks, John Spencer, Matthew Storckman, John Sujishi, Bryan Terry, Kimberly Terry, Andrea Tevini, Brent Topie, Nicole Topie, Gerry Trias, Flor Trias, Scott Trump, Frank Vonada, Julie Vonada, Joe Wehrle, John White, Spencer White, John Wilcox, Kathryn Wilcox, Robert Williams, Carey Wishon and Janel Young are "citizens of the State of California")).

20.    Twelve plaintiffs are not citizens of California.  (Cmplt. ¶ 43 (Billy and

1 Jennifer Perkins "are citizens of the State of Oklahoma"; *id.* ¶ 53 (Rick Russell and Nielsen

2 Tauoa "are citizens of the State of Nevada"); *id.* ¶ 57 (Edward Schultz "is a citizen of the

3 State of North Carolina"); *id.* ¶ 64 (Chad and Britney Smith "are citizens of the State of

4 Washington"); *id.* ¶ 65 (Glen Smith "is a citizen of the State of Nevada"); *id.* ¶ 65 (Steven

5 Smith "is a citizen of the State of Wyoming"); *id.* ¶ 76 (Kimberly and Robert Topie "are

6 citizens of the State of Idaho"); *id.* ¶ 86 (Charles Young "is a citizen of the State of

7 Alaska")).  No plaintiff is a citizen of the States of Michigan or Delaware.  (*See generally*

8 Cmplt.)

9    21.    Defendants GM and Robert Bosch LLC are limited liability companies.  "An

10 LLC is a citizen of every state of which its owners/members are citizens."  *Johnson v.*

11 *Columbia Prop. Anchorage*, *LP*, 437 F.3d 894, 899 (9th Cir. 2006).  The sole member and

12 owner of GM is General Motors Holding LLC, a Delaware limited liability company with

13 its principal place of business in the State of Michigan, and the only member and owner of

14 General Motors Holding LLC is General Motors Company, a Delaware Company with its

15 principal place of business in Michigan.  (*See* Cmplt. ¶ 97)  Robert Bosch LLC is a

16 Delaware limited liability company with its principal place of business in the State of

17 Michigan.  (*See* Answer of Robert Bosch LLC, *In re Duramax*, ECF. No. 65 at 14.)  The

18 sole member and owner of Robert Bosch LLC is Robert Bosch North America Corporation.

19 Robert Bosch North America Corporation is a Delaware Corporation with its principal

20 place of business in Michigan.  Defendant Robert Bosch GmbH, is a German company

21 organized under the laws of Germany with its principal place of business in that country.

22 (*See* Cmplt.)

23    22.    Corporations are citizens of their states of incorporation and principal place

24 of business.  28 U.S.C. § 1331(c)(1).  Accordingly, GM and Bosch LLC are citizens of

25 Delaware and Michigan, and Robert Bosch GmbH is a citizen of the foreign state of

26 Germany.[8]

27

28 ─────────────────────────

[8] Plaintiffs do not include "Does" as defendants in the case caption, but do refer to "Does

**B.**    **The California Dealer Defendants Cannot Defeat Diversity Jurisdiction.**

23.    In a transparent effort to avoid diversity jurisdiction and removal, plaintiffs include two Dealer Defendants who are citizens of the State of California.  The sole references to the Dealer Defendants in the 170+ page, 380+ paragraph Complaint are allegations that: (i) the Dealers are registered and transact business in California (Cmplt. ¶¶ 88-90); (ii) two Plaintiffs "acquired" their vehicles from the Dealers (*id.* ¶¶ 105-107); (iii) the Dealer Defendants are "distributors" as defined under Cal. Civ. Code § 1791 (*id.* ¶ 291); (iv) <u>all</u> Defendants (*i.e.*: GM, Robert Bosch LLC, Robert Bosch GmbH, and the Dealer Defendants) purportedly made unidentified "material misrepresentations of fact to Plaintiffs concerning the quality and condition" of the vehicles (*id.* at Count 6); and (v) GM and the Dealer Defendants breached implied or express warranties.  (*Id.* at Counts 1 & 2)

24.    Contrary to plaintiffs' assertion, the inclusion of the Dealer Defendants cannot defeat diversity jurisdiction or preclude removal under the forum defendant rule.  (Cmplt. ¶¶ 94-96, 117)

**1.**    **The Court Should Disregard The Citizenship Of The Dealer Defendants Because They Are Fraudulently Joined.**

25.    "A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was 'fraudulent' or a 'sham.'"  *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 2018 WL 5905942, at *5 (C.D. Cal. Sept. 10, 2018) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)).  "[F]raudulently joined defendants will not defeat removal." *Ritchey*, 139 F. 3d at 1318; 28 U.S.C. § 1441(b)(2) (The forum defendant rule precludes removal only

---

1 through 10" in the body of the Complaint.  (*See* Cmplt. at p. 3; *id.* ¶ 92.)  To the extent plaintiffs purport to allege claims against "Doe" defendants, the Court should disregard such defendants for the purposes of determining diversity jurisdiction.  28 U.S.C. § 1441(b) ("the citizenship of defendants sued under fictitious names shall be disregarded").

if a "*properly joined* and served" defendant is "a citizen of the State in which such action is brought.") (emphasis added).

26.     The Court should not consider the citizenship of the Dealer Defendants because they are fraudulently joined.  Fraudulent joinder may be established by showing that a non-diverse defendant "cannot be liable under any theory."  *Grancare, LLC v. Thrower, by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018); *see also Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 496 (6th Cir. 2016) (fraudulent joinder where there is no "colorable basis for predicting that a plaintiff may recover against non-diverse defendants.").   "[I]n many cases, the complaint will be the most helpful guide in determining whether defendant has been fraudulently joined." *Grancare*, 889 F.3d at 549.[9]

27.     The only claims purportedly brought against the Dealer Defendants are for Breach of Express Warranty, Breach of Implied Warranty - Song Beverly Consumer Warranty Act, and Negligent Misrepresentation.  (Cmplt. at Counts 1, 2, 6)  There is no colorable basis or "possibility that a state court would find the complaint states a cause of action" for breach of warranty or negligent misrepresentation (or any other claim related to alleged emissions "defeat devices") against the Dealer Defendants.  *See Grancare*, 889 F.3d at 548 (quotation and citation omitted).

28.     The express and implied warranty claims lack a colorable basis because they are expressly preempted by the federal Clean Air Act.   *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1026 (N.D. Cal. 2018) (dismissing as preempted  "state law warranty claims (both express and

---

[9] The "test for fraudulent joinder and failure to state a claim are under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549.  *First*, "[a] claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Grancare*, 889 F.3d at 549; *see also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).  *Second*, "[t]he party seeking removal is entitled to present additional facts that demonstrate that a party has been fraudulently joined." *Grancare*, 889 F.3d at 549; *see also Casias*, 695 F.3d at 433 (court may "pierce the pleadings" in considering remand motions).  GM reserves all rights to submit evidence with respect to fraudulent joinder or any other appropriate issue in response to any motion to remand.

implied)" because they were based on alleged "violations of federal emissions standards"); *see also* 42 U.S.C. § 7543(a). While Heygood "artfully pled" the warranty claims around California (as opposed to federal) emissions standards, (Cmplt. ¶¶ 294, 311), federal preemption still applies. The gravamen and allegations of the Complaint—which contains dozens of references to alleged non-compliance with federal EPA standards, and which are expressly incorporated by reference to the warranty claims (*id.* ¶¶ 287, 301)—is that plaintiffs allegedly "acquired the vehicle on the reasonable but mistaken belief that the vehicle . . . was properly EPA-certified." (*E.g.*, Cmplt. ¶ 21) The claims are therefore preempted; thus, there is no colorable claim against the Dealer Defendants based on express or implied warranty claims.[10]

29. The warranty claims also fail for additional reasons. *First*, there is no plausible or colorable claim for breach of express warranty against the Dealer Defendants because plaintiffs do not allege that they relied on any specific representations made by the Dealer Defendants. *See Sukonik v. Wright Med. Tech., Inc.*, 2015 WL 10682986, at *14 (C.D. Cal. Jan. 28, 2015) (dismissing express warranty claims because plaintiff "fails to adequately allege reliance"); *In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F.Supp.2d 993, 1013 (S.D.Cal.2011) ("Because the FAC fails to allege facts showing that ... the Retailer Defendants ... made ... representations regarding the Products that Plaintiffs relied on in purchasing the Products, the Court dismisses the ... express warranty claim ... as to the Retailer Defendants"); *Nabors v. Google, Inc.*, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011) (dismissing express warranty claims where plaintiff failed to allege reasonable reliance on any specific representations made by the defendant). Instead, to the extent plaintiffs purport to allege reliance at all, they repeatedly refer only to claimed

---

[10] Nor does Heygood's generic lumping of implied warranty claims against both "GM and the Dealer Defendants" create a plausible or colorable claim. At best, the implied warranty claims against the Dealer Defendants are "essentially a legal conclusion framed as a factual allegation, unsupported by factual allegations concerning" any alleged warranties made by the Dealers, and therefore "must be dismissed." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 953 (C.D. Cal. Jan. 6, 2012).

reliance on alleged GM information, marketing, or statements.  (*E.g.* Cmplt. ¶¶ 21-87)

30.     *Second*, there is similarly no colorable basis for the cause of action of implied warranty against the Dealer Defendants.  Among other things, plaintiffs do not allege that their vehicles "were unfit for ordinary use."  Even taking the defeat device allegations as true, plaintiffs do not and cannot come close to showing that "the product did not possess even the most basic degree of fitness for ordinary use," as required to state an implied warranty claim.  *See Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406, 7 Cal. Rptr. 3d 546 (2003).  In the context of pleading an implied warranty claim for an alleged vehicle defect, courts have repeatedly required the defect to be so vital to the functioning of the vehicle that it is unfit for driving: "The basic inquiry, therefore, is whether the vehicle was fit for driving."  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945–46 (C.D. Cal. 2012); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) (same); *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995) ("the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation").[11]  Likewise, plaintiffs must (but did not) allege they were forced to abandon use of the vehicle because of the supposed defect.  *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim with prejudice because "Plaintiffs have not alleged that they stopped using their vehicles"); *Beck v. FCA US LLC*, 2018 WL 3359100, at *2 (E.D. Mich. July 10, 2018) (affirming dismissal of implied warranty claim under California law because plaintiff did not allege abandoned use of the product).  Plaintiffs do not and cannot allege facts to meet this standard because the defect that they allege has no impact on their ability to drive their vehicles at all.  (Cmplt. ¶¶ 21–93)

31.     The negligent misrepresentation claim offers no colorable basis for relief as

---

[11] It is also telling that, with the exception of the two Heygood California Cases, none of the 27 federal cases (including the 26 federal cases brought by Heygood on behalf of 2900 plaintiffs) alleges express or implied warranty claims against dealers or anyone else.

to the Dealer Defendants either. *First*, aside from the unremarkable claims that two plaintiffs acquired vehicles from two California dealers, plaintiffs do not make a single factual allegation about what either Dealer purportedly said or "misrepresented" to them. Plaintiffs plead nothing about the nature of any alleged transaction or communication with the Dealer Defendants, failing to even allege whether the vehicles were "acquired" by lease or sale (or otherwise); or whether any supposed misrepresentation had anything to do with the alleged emissions violations that are the gravamen of the Complaint. It is clear that plaintiffs fraudulently joined the Dealer Defendants for no other reason than to try to defeat diversity jurisdiction and prevent removal to federal court.[12]

32. "Under California law, '[a] negligent misrepresentation claim requires a positive assertion, not merely an omission.'" *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (quoting *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (Ct. App. 2011)). Plaintiffs do not make any factual allegations of purported misconduct against the Dealer Defendants—let alone identify any affirmative or positive statements that the Dealer Defendants allegedly made to them or anyone else.[13] In the absence of any factual allegations supporting a cause of action against non-diverse defendants, the Court should disregard these non-diverse defendants under the doctrine of fraudulent joinder. *See In re Ford Motor Co.*, 2018 WL 5905942, at *6 (finding non-diverse dealers fraudulently joined where "the gravamen of the negligent repair claim appears to be that the Dealer failed 'to properly store, prepare and repair' a vehicle, but the KLG Plaintiffs point to no factual allegations to that effect.").

33. *Second and independently*, under California negligent misrepresentation law,

---

[12] Heygood did not name a single Dealer Defendant in any of the corresponding 26 Heygood Federal Cases it filed, nor are any named in the Federal Class Action.

[13] Plaintiffs in the Federal Class Case (whose factual allegations mirror those in the Heygood California Cases) disavowed making affirmative misrepresentation claims against any defendants. *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1056 (E.D. Mich. 2018).

a plaintiff must show that the defendant was "without reasonable grounds for believing" the alleged misrepresentation "to be true." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (App. Ct. 1986).

34.     Plaintiffs' allegations in the Heygood California Cases—particularly when contextualized against the backdrop of the First Heygood California Cases and the Heygood Federal Cases—belie any colorable claim that the Dealer Defendants were "without reasonable grounds for believing" any unspecified misrepresentations regarding the emissions controls or "defeat devices" at issue in the Complaint.

35.     In the First Heygood California Cases and the Heygood Federal Cases, Plaintiffs allege that GM and the Bosch Defendants: (i) "*lied* to the government, its customers, *its dealers*, and the public at large;" (ii) "*hid these facts*" regarding alleged fraudulent obtainment of Certificates of Conformity  . . . . from the EPA, CARB and other regulators, *its dealers*, and consumers;" and (iii) "*did not report information*" to "federal and state authorities, *its dealerships,* or consumers; nor would a reasonable and diligent investigation have disclosed that GM had concealed information about the true emissions of the Fraudulent Vehicles"[14]  After GM removed the First Heygood California Cases to federal court, Heygood dismissed those cases and re-filed the Heygood California Cases with references to the "dealers" or "dealerships" deleted in a transparent effort to defeat diversity jurisdiction.[15]   (*See* Cmplt. ¶¶ 225, 226, 279.)

36.     Regardless of this wordsmithing, the core allegations of a secret conspiracy between GM and the Bosch Defendants to create and conceal defeat devices are irreconcilable with a claim that Dealer Defendants made negligent misrepresentations, and instead exonerate the non-diverse Dealer Defendants.  In *In re Rezulin Prods. Liab. Litig.*,

---

[14] *See, e.g.*, Cmplt., *Abney*, No. 1:19-cv-11376, ECF No. 1 ("*Abney* Cmplt.") ¶¶ 248-49, 302; Cmplt., Case No. 2:19-cv-05211-CAS-JRP (C.D. Cal.), ECF No. 1 at ¶¶ 225, 226, 279).

[15] In contrast, Heygood has not modified the language in the Heygood Federal Cases to delete references to the dealers in those same otherwise identical allegations.

133 F. Supp. 2d 272 (S.D.N.Y. 2001), the federal district court found non-diverse pharmacies and physicians were fraudulently joined in analogous circumstances.  The *Rezulin* plaintiffs alleged harm from a diabetes medication based on the underlying theory that the drug "manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians, distributors, and pharmacists—indeed, from everyone."  *Id.* at 290.  In these circumstances, the court found that "[p]laintiffs' allegations that pharmacists knew and failed to warn of the dangers therefore are purely tendentious."  *Id. Murray v. General Motors LLC*, 478 F. App'x 175 (5th Cir. 2012), is also instructive.  In that case, the Fifth Circuit affirmed the district court's finding of no possibility of recovery on fraudulent misrepresentation claims against non-diverse dealers where the "only allegations in the complaint concerning fraud stated that 'the defendants negligently, gross [sic] negligently, and fraudulently misrepresented and made omissions to the public, including the plaintiffs, about the safety and maneuverability of the 2006 Chevrolet HHR automobile,'" but the "complaint contains no descriptions of the specific statements that [plaintiffs] claim were fraudulent, or when and where such statements were made" and "is entirely devoid of specific allegations about [non-diverse dealers'] alleged fraudulent misrepresentation."  *Id.* at 181 (citations omitted).[16]

> ### 2.   In The Alternative, The Court Should Sever And Remand The Claims Against The Non-Diverse Dealer Defendants As Dispensable Parties.

37.   Alternatively, under Federal Rule of Civil Procedure 21, the Court may retain federal jurisdiction by severing the claims against the Dealer Defendants as non-diverse

---

[16] *See also Weidman v Exxon Mobile Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (non-diverse employee defendant was fraudulently joined because there was no possibility of a cause of action in state court where defendant was "only mentioned in the complaint caption; [and] there is no factual detail at all to support any claims against him."); *Mask v. Chrysler Corp.*, 825 F. Supp. 285, 288-29 (N.D. Ala. 1993), *aff'd*, 29 F.3d 641 (11th Cir. 1994) (non-diverse dealer-defendants were fraudulently joined where, among other things, plaintiffs' attorneys conceded that the totality of the problems involved manufacturing processes).

dispensable defendants. *Neman-Green, Inc. v. Alfonzo-Larrian*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . ."); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) ("Rule 21 grants a federal district or appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." ); *Soberay Mach. & Equip. Co. v. MPF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity.").

38.     The Dealer Defendants are dispensable parties because they are neither necessary for a just adjudication nor indispensable. *See In re Ford Motor Co.*, 2018 WL 5905942, at *8 (finding dealers were dispensable parties and severing the claims against them to preserve subject matter jurisdiction: "The Plaintiffs can secure full relief from Ford alone, as the gravamen of their claims is that their Ford vehicles are irreparably defective, and that Ford fraudulently concealed that fact."). The dispensability of the Dealer Defendants is underscored by the fact that not a single dealer is named as a defendant in any of the 27 cases pending in federal courts, including the 26 Heygood Federal Cases that are purportedly brought by over 2900 individual plaintiffs.

39.     To the extent plaintiffs could bring some type of claim against the Dealer Defendants, such claims would be separate and distinct from the claims against the other Defendants and would have nothing to do with GM's or the Bosch Defendants' alleged design and concealment of the alleged "defeat devices" at issue in this case. *See Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 872 (N.D. Ohio 2009) (denying motion to remand claims against product manufacturer defendant, but severing and remanding claims against non-diverse healthcare providers, where "medical malpractice allegations differ from the Josephs' products liability claim which focuses on [the manufacturer's] conduct in dispensing, manufacturing, labeling and recalling tainted Heparin.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C. Removal Is Proper Because The Amount In Controversy Requirement Is Met.

40.    Section 1332(a) requires that the amount in controversy "exceeds the sum or value of $75,000, exclusive of interests and costs."  The removing party's initial burden is to "file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"  *Ibarra v. Manheim Invs., Inc.*  775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014)).[17]  The removing party must only make a plausible allegation that there is "'at least one' claim that satisfies the amount-in-controversy requirement;" "supplemental jurisdiction may be exercised over the claims of other parties."  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005)).

41.    Plaintiffs seek damages including "all sums paid" for their vehicles, civil penalties, attorneys' fees, restitutionary disgorgement, punitive damages, and damages for embarrassment, humiliation, mental anguish, and emotional distress.  (Cmplt. ¶¶ 300, 316, 332, 343, 365, 372; Prayer For Relief A-F & H)  GM disputes that it is liable for any damages to plaintiffs.  The amount-in-controversy inquiry, however, is "not a prospective assessment of [the] defendant's liability;" it is "simply an estimate of the total amount in dispute."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  The amount in controversy in this case exceeds $75,000.

42.    *First*, requests for restitution for "all sums paid" for their vehicles, "clearly puts the full amounts paid to buy and lease the cars in dispute."  *See* Order Denying Motion to Remand, *In re Volkswagen 'Clean Diesel' Mktg., Sales Prac. & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal. Feb. 19, 2019), ECF No. 5904 at 9.  Upon information and belief, the full amounts paid to buy or lease the Duramax Vehicles was for many plaintiffs

---

[17]  Should plaintiffs contest that the amount in controversy exceeds the jurisdictional amount, GM reserves the right to fully brief and present further evidence supporting its allegations that the amount in controversy exceeds $75,000.  *Ibarra*, 775 F.3d at 1195.

-17-

in excess of tens of thousands of dollars per vehicle.

43.     *Second*, attorneys' fees may be available under the California Consumers Legal Remedies Act or the Song-Beverly Act claims.  Cal. Civ. Code. § 17800; Cal. Civ. Code § 1794(d).  Courts routinely find requests for attorneys' fees push the amount in controversy over the jurisdictional minimum.  *See, e.g. Anyanwu v. Jaguar Land Rover N. Am. LLC*, 2015 WL 3644004, at *3 (C.D. Cal. June 8, 2015) (lemon-law case met amount in controversy requirement based in part on attorney-fee allowance); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (lemon-law cases may involve "fee awards . . . of over $60,000").[18]

44.     The cumulative sums in controversy for alleged damages and attorneys' fees plainly satisfy the amount in controversy requirement.[19]

45.     In sum, the complete diversity of citizenship and amount-in-controversy requirements are satisfied, and removal under 28 U.S.C. § 1332(a) is proper.

## II.   CAFA "CLASS ACTION" JURISDICTION UNDER 28 U.S.C. § 1332(D)

46.     Removal is independently proper under the "class action" prong of CAFA. "Congress enacted CAFA in 2005 to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multistate or even national class actions in state courts.'"  *Corber v. Xanodyne Pharm., Inc.*, 771 F. 3d 1218, 1222 (9th Cir. 2014) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir.

---

[18]  Plaintiffs also make punitive damages claims.  While GM specifically disputes punitive damages could be available in the Heygood California Cases, the Heygood Federal Cases, or the Federal Class Case, "[i]t is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  Because certain of the California laws at issue here may allow for punitive damages in certain circumstances, the Court may consider punitive damages (even though such claims are meritless) in determining whether the amount-in-controversy requirement is satisfied.  *See, e.g., In re Volkswagen*, MDL No. 2672, ECF No. 5904 at 11-13.

[19] In offering good faith calculations of amounts sought by plaintiffs, GM does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit and reserves all rights and defenses to such claims.

2009)).  CAFA provides that a "class action" may be removed in accordance with 28 U.S.C. § 1446 if: (a) the purported class includes at least 100 members; (b) any purported class member is a citizen of a state that is different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. §§ 1332(d) & 1453(b).  In implementing this provision, Congress relaxed the traditional rules for diversity jurisdiction, requiring only "minimal" diversity among the parties and allowing aggregation of the jurisdictional amount-in-controversy.  28 U.S.C. § 1332(d)(6).  These requirements are met here.

47.     *First*, under Section 1332(d), "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute or rule of judicial procedure* authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  While plaintiffs deny that they bring claims as class actions, the labels are not dispositive.  Courts have found CAFA class action jurisdiction where no class allegations were pleaded but the cases were (like the instance case) nonetheless related in some fashion to other class action cases.  In *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, for example, the Seventh Circuit concluded that an individual action was removable as a CAFA class action even though plaintiff purposefully excluded class allegations from its complaint because the action was "in substance a class action.  731 F.3d 740, 744 (7th Cir. 2013).  "'To hold otherwise would, for CAFA jurisdictional purposes, . . . exalt form over substance, and run directly counter to CAFA's primary objective' of expanding federal jurisdiction over national class actions."  *Id*. at 744 (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).  CAFA class action jurisdiction exists where an action "resembles a class action."  *Williams v. Emp'rs Mut. Cas. Co.*, 2014 WL 1375470, at *1-3 (E.D. Mo. April 8, 2014) (denying motion to remand plaintiffs' individual "equitable garnishment action" to satisfy a prior class action judgment, finding that CAFA class action jurisdiction existed even though plaintiff did not plead any class allegations).

48.     The Heygood California Cases copy nearly verbatim allegations from the Federal Class Complaint, making only minimal changes—*e.g.*, defining the vehicles in question as "Fraudulent Vehicles" as opposed to "Polluting Vehicles." (*Compare* Cmplt. ¶¶ 1-20, 91-103, 112-285, *with Duramax* Cmplt. ¶¶ 1-21, 39-224.)   The Heygood California Cases purport to rely on "Class Counsel's" alleged expert testing; reference "Class Counsel" numerous times, and each Heygood California Case complaint cites—and includes identical visual excerpts from—the exact same 48 exhibits that were attached as exhibits to the Federal Class Case complaint. (*See generally id.*)[20]  Moreover, each of the 92 individual plaintiffs in this removed action (as well as those included in the beginning-of-the-alphabet *Bulaon* action) are included in the putative Class definition in the Federal Class Case. (*See Duramax* Cmplt. ¶ 225 (defining the "Class" as "All persons who purchased or leased a model year 2011-2016 GM Silverado 2500HD or 3500HD, or a GM Sierra 2500HD or 3500HD").)[21]

49.     In addition, the allegations for each individual plaintiff in the Heygood California Cases contain identical boilerplate allegations that are copied verbatim from the individual plaintiff allegations contained in both the Heygood Federal Cases and the Federal Class Case:

_____

[20] The California state-law claims in the Heygood California and Federal Class Cases also overlap and make verbatim allegations in support of claimed violations of: (i) California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* (*compare* Cmplt. ¶¶ 317-332, *with Duramax* Cmplt. ¶¶ 296-312); (ii) California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq* (*compare* Cmplt. ¶¶ 333-343, *with Duramax* Cmplt. ¶¶ 313-24); and (iii) California Fraudulent Concealment (*compare* Cmplt. ¶¶ 344-365, *with Duramax* Cmplt. ¶¶ 330-49).

[21] By removing the Heygood California Cases as putative class actions under CAFA, GM does not concede or admit, in any fashion, that such claims are proper for class certification, that claims for class certification have legal or factual merit, or that the claims could or should ever be jointly tried in any federal or state court.  GM expressly reserves all rights and defenses with respect to class certification claims.

Unknown to Plaintiff at the time the vehicle was [purchased] [leased] [acquired], it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, exceeded the allowed level of pollutants such as NOx. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss in the form of overpayment at the time of purchase, and diminished value of his vehicle. GM knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff [purchased] [leased] [acquired] his vehicle on the reasonable but mistaken belief that his vehicle was a "clean diesel" and/or a "low emission diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately [purchased] [leased] [acquired] his vehicle, in part, because of the diesel system, as represented through advertisements and representations made by GM. [Plaintiff recalls that before he purchased the vehicle, he reviewed advertisements on GM's website and representations from GM's authorized dealer] [Before acquiring the vehicle, Plaintiff further saw and relied on additional information and marketing by GM] touting the efficiency, fuel economy, and power and performance of the engine. Had GM disclosed this design or the fact that the vehicle actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle or would have paid less for it. Plaintiff [and each Class member] has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations . . . , including but not limited to a high premium for the Duramax engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses by overpaying for the vehicles at the time of purchase, and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the diesel engine system of the [Polluting] [Fraudulent] Vehicle[s] prior to [purchase] [lease] [acquisition].

*Compare, e.g.*, Cmplt. ¶¶ 21-87, *with Abney* Cmplt. ¶¶ 26-121, *Duramax* Cmplt. ¶¶ 26-38.

50.     Tellingly, although Heygood did not label the 26 Heygood Federal Cases as class actions, the law firm states in each and every one of those substantively identical federal cases that "This [federal] Court also has original jurisdiction over this lawsuit

NOTICE OF REMOVAL

pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005 . . . ." (*See, e.g., Abney* Cmplt. ¶ 22.)  That is because the Heygood Federal Cases, like the Heygood California Cases, are in effect putative class actions.

51.    The alphabetical gerrymandering of the Heygood California Cases to avoid including 100 plaintiffs in each complaint does not alter the result.  "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Freeman*, 551 F.3d at 407.  Here the putative class would include at least 175 members when one properly disregards the artificial alphabetical split across complaints.  (While courts have declined to exercise jurisdiction under the "mass action" prong of CAFA where the 100-plaintiff minimum is defeated through alphabetical divisions,[22] GM does not seek removal under CAFA's "mass action" prong at this time.[23]).

52.    *Second*, the "minimal diversity" requirement is easily met here—regardless of whether the citizenship of the fraudulently-joined Dealer Defendants is considered.  Diversity is met under CAFA class action removal where "any member of a class of plaintiffs is a citizen of a State different from any defendant" or "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state . . . ."  28 U.S.C. §1332(d)(2).  And the "forum defendant" rule likewise does not apply to CAFA removal.

[22] In *Lorenzo v. Dole Food Co.*, 2009 WL 690034 (C.D. Cal. Mar. 9, 2009), for example, the court found that CAFA mass-action removal was unavailable where each of the actions was brought with fewer than 100 plaintiffs, observing that Congress excluded "actions in which claims have been 'joined upon motion of a defendant' from the definition of '*mass action*.'" *Id.* at *4 (emphasis added) (quoting 28 U.S.C. § 1332(11)(B) (ii)(II); *Tanoh v. AMVAC Chem. Corp.*, 2008 WL 4691004, at *5 (C.D. Cal. Oct. 21, 2008)).  The "class action" prong, in contrast, contains no such exclusion.  28 U.S.C. § 1332(d)(1)(B).

[23] GM reserves all rights to remove based on CAFA's mass action prong in the event that the Complaint is remanded to state court and that the prerequisites for removal under that prong are met.  *See Corber*, 771 F. 3d at 1222 (finding petitions for coordination "for all purposes" pursuant to California code of Civil Procedure section 404, to be proposals for "joint trials" of more than 100 plaintiffs, and thus removal was proper under CAFA "mass action" provision.  28 U.S.C. § 1332(d)(11)(B)(i)).

28 U.S.C. § 1441(b)(2) (forum defendant rule applicable in action "otherwise removable *solely* on the basis of [diversity] jurisdiction under section 1332(a)") (emphasis added).

53.     *Third*, the $5 million amount-in-controversy requirement is satisfied because in a CAFA class action removal, "the claims of the individual class members shall be aggregated" to determine whether the jurisdictional threshold amount is met.  28 U.S.C. § 1332(d)(6).

54.     For these reasons, CAFA's "class action" prong provides an additional basis for federal jurisdiction and removal to this Court.

### III.     FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331.

55.     The Complaint is independently removable based on federal question jurisdiction.  Although plaintiffs purport to allege only state law claims (Cmplt. ¶ 111), the gravamen of the claims are necessarily federal in character, and plaintiffs' right to relief depends upon the resolution of substantial, disputed questions of federal law.  *See Grable v. Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (alleging only state-law claims does not bar removal under federal question jurisdiction if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *see also Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.*, 2004 WL 1888769, at *5 (N.D. Cal. July 21, 2004) (same).  Plaintiffs' claims require resolution of a substantial question of federal law.

56.     The crux of plaintiffs' case hinges on whether (i) the properly-joined defendants evaded federal emissions standards and engaged in a scheme to prevent U.S. regulators from uncovering the alleged defeat device; and (ii) the Duramax Vehicles complied with U.S. emissions standards and were properly EPA-certified, or "violates U.S. and CARB emissions standards."[24]  (*See, e.g.* Cmplt. ¶¶ 2-4, 15, 16, 19-87, 93, 95, 211-

---

[24] GM appreciates that another court has rejected removal based on federal-question jurisdiction in another case involving alleged violations of emissions standards.  *E.g.*, Order, *In re Volkswagen 'Clean Diesel' Mk'g, Sales Prac. & Prods. Liab. Litig.*, MDL No.

212, 265, 267-268.)[25]

57.     Despite repeated references to federal emissions standards and substantial federal questions throughout the Complaint, plaintiffs carefully avoid expressly referencing those same federal standards or any federal causes of action in the stated causes of action (though they incorporate by reference all preceding allegations, including those related to federal standards). (*See generally*, Cmplt. Claims For Relief (omitting any reference to federal or EPA emissions standards or federal RICO law); *see also and compare id.* ¶ 319(d) (claiming violation of California UCL by marketing the vehicles as "CARB-compliant") *with Duramax* Cmplt. ¶ 299(iv) (claiming violation of California UCL by marketing the vehicles as "EPA-compliant")).  But plaintiffs' putative state-law clams predicated on federal emissions standards and EPA regulations and alleged violations of federal emissions laws arise under federal law and are manifestly federal in character.

58.     The "artful pleading" doctrine prevents a plaintiff from doing precisely what Heygood transparently attempts to here: "avoid[ing] federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. 2003).  Under the doctrine, if "a plaintiff chooses to plead what 'must be regarded as a federal claim,' then removal is at the defendant's" option.  *Sparta Surg. Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987)).

59.     Accordingly, plaintiffs' claims are removable to federal court under 28 U.S.C.

2672, ECF No. 5977 (N.D. Cal. Mar. 8, 2019).  That opinion was rendered in a different context than the underlying facts here and, in any event, is not binding on this Court.

[25] *See also* Cmplt. ¶¶ 112-113, 121 (describing federal emissions standards, including the U.S. Clean Air Act's "strict emissions standards for vehicles" and required certifications "to the EPA that vehicles sold in the U.S. meet applicable federal emissions standards to control air pollution.").

§ 1331 because they are federal in character; the right to relief depends upon the resolution of substantial, disputed questions of federal law; and federal jurisdiction may not be defeated by artful pleading.

## OTHER REQUIREMENTS FOR REMOVAL HAVE BEEN MET

60.    On July 24, 2019, GM was served with the *Pantel* Complaint. Pursuant to 28 U.S.C. §1446(a), true and correct copies of all process, pleadings, and orders served upon GM are attached to this Notice of Removal as Exhibit 1.

61.    The Notice has been timely filed pursuant to 28 U.S.C. § 1446(b)(2)(B).

62.    The Superior Court for the State California, County of Los Angeles, is located within the Central District of California. This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

63.    All defendants who have been properly served have consented to the removal of this action pursuant to 28 U.S.C. § 1446(b)(2)(A).

64.    GM is serving written notification of the removal of this case on the following plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d):

> Charles W. Miller (SBN 276523)
> Michael E. Heygood
> HEYGOOD, ORR & PEARSON
> 6363 N. State Hwy. 161, Suite 450
> Irving, Texas 75038

65.    GM promptly will file a Notification of Removal, attaching a copy of this Notice of Removal, with the Clerk of the Superior Court, Los Angeles County, pursuant to 28 U.S.C. § 1446(d).

66.    By removing this action, GM does not waive any substantive, jurisdictional, or procedural defenses.

## CONCLUSION

Pursuant to 28 U.S.C. §§ 1331, 1332(a), 1332(d), 1441, 1446, and 1453, GM hereby removes this action from the Superior Court for the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

1

2

3    Dated:  August 23, 2019          KIRKLAND & ELLIS LLP

4                                     By:  _/s/ Robyn  E. Bladow_
5                                          Robyn E. Bladow

6                                     *Attorneys for Defendant General Motors LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL